# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

## CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION:_____

USCA NO.: _____

LOWER COURT or AGENCY and DOCKET NUMBER:

_____

NAME OF
JUDGE:_____

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

On April 18, 2022, Tanya Blango initiated this action against her employer, the City of Philadelphia, and her former commanding officer, Christine McShea in the district court asserting claims for: (1) race discrimination; (2) hostile work environment, and (3) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

At all time material, Ms. Blango was and is an African-American Sergeant in the Philadelphia Police Department. Ms. Blango alleges that between January 2019 and May 2020, her Captain and Commanding Officer, Christine McShea, subjected her to racially discriminatory treatment and retaliation that was sufficiently severe or pervasive to create a hostile work environment.

On October 21, 2022, nearly two months after it was originally requested in discovery and barely two weeks before Defendants motion for summary judgment, the City of Philadelphia produced a 252-page Internal Affairs investigation report arising out of an internal discrimination complaint Ms. Blango submitted in February 2020. The report concluded, inter alia, Defendant McShea subjected Ms. Blango to disparaging treatment in violation of departmental policy and sufficient to warrant discipline for failure to supervise. As part of the investigation, four African American officers in Ms. Blango's Police District provided witness statements attesting that Defendant McShea's treatment of Ms. Blango was racially motivated, and corroborating many of Ms. Blango's claims.

On November 4, 2022, Defendants filed a Motion for Summary Judgment seeking judgment as a matter of law on all of Ms. Blango's claims. Briefing on summary judgment was complete as of November 25, 2022.

On December 1, 2022, the district court granted Defendants' Motion for Summary Judgment and entered final judgment in favor of Defendants on all of Ms. Blango's claims.

On December 23, 2022, Ms. Blango filed a Notice of Appeal in the District Court.

On December 27, 2022 the district court clerk docketed Ms. Blango's Notice of Appeal in the United States Circuit Court of Appeals for the Third Circuit under docket no.: 22-3446.

Identify the issues to be raised on appeal:

(1) Whether the lower court erred by failing to credit testimonial evidence from multiple witnesses corroborating Plaintiff's allegations that McShea's conduct towards Plaintiff was racially motivated.

(2) Whether the lower court erred by focusing on individual instances instead of the overall scenario in analyzing Plaintiff's hostile work environment claims.

(3) Whether the lower court erred in granting summary judgment on Plaintiff's retaliatory hostile work environment claim based entirely upon the determination that Plaintiff had failed to explicitly plead a retaliatory hostile work environment claim in her Complaint.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this 5th day of January ,20 23 .

______________________________

Signature of Counsel

Rev. 07/2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANYA BLANGO | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-1487 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CHRISTINE MCSHEA | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                        December 1, 2022

A Black police sergeant believing her White supervising captain created a hostile work environment must adduce evidence of severe or pervasive conduct altering the terms of her employment because of her race to proceed to a jury trial. Unpleasantries, personality conflicts, and perceived dysfunction between the White captain and the Black sergeant may erode earned respect for officers but is not alone a hostile work environment under federal law.

The Black sergeant adduced no evidence through discovery of racially based utterances. She adduced no evidence of conduct against her motivated by her race. The Black sergeant attempts to pin her theory on her impressions and a police lieutenant's internal investigation confirming the White captain's disparaging treatment of the Black sergeant. But the investigating lieutenant also found no similar conduct towards other officers regardless of race and drew no connection between the White captain's disparaging treatment and the Black sergeant's race.

We appreciate racist conduct is too often hidden through microaggressions and regrettable ignorant conduct. But federal law does not remedy racially hostile work environments absent evidence of severe or pervasive conduct altering the terms of the employment because of race. The Black sergeant offers umbrage but adduces no such competent trial evidence. We grant the captain's and her former employer's Motion for summary judgment.

## I.    Undisputed material facts[1]

Black woman Tanya Bannerman-Blango joined the Philadelphia Police Department as a corrections officer in 1994 and a police officer in 2006.[2] The Philadelphia Police Department promoted Officer Blango to sergeant and transferred her to the 16th District in 2017.[3] The 16th District includes a high crime area.[4] The Department disciplined Sergeant Blango for improper use of department equipment and abuse of authority in September 2017 and August 2018.[5] Sergeant Blango concedes this discipline did not involve her race.[6]

Sergeant Blango's employment problems began within two months after the Department reassigned White Captain Christine McShea to the 16th District on December 3, 2018.[7] The Department employed Captain McShea for more than thirty years.[8] Captains supervise lieutenants, who supervise sergeants, who then supervise corporals and other police officers.[9] Captain McShea began supervising Sergeant Blango when she moved to the 16th District in December 2018. Sergeant Blango claims Captain McShea began having conflicts within a month of their relationship at the 16th District and at various times in 2019 and early 2020.[10]

Captain McShea and Sergeant Blango did not get along. Sergeant Blango viewed their conflicts as violating department policies. She filed an Equal Employment Opportunity complaint with the Department's Internal Affairs Division on February 10, 2020.[11] Sergeant Blango complained (within nine weeks of working together) Captain McShea retaliated against her, harassed Black supervisors so Captain McShea's White friend Sergeant Kerstetter could be transferred to the 16th District, and circumvented Sergeant Blango's authority as a supervisor which she did not do to White supervisors.[12] The Department's Internal Affairs Division assigned Lieutenant Conway to investigate Sergeant Blango's allegations. Lieutenant Conway interviewed several officers including Captain McShea and Sergeant Blango between February

2020 and July 2022 and reviewed several documents.[13] Lieutenant Conway concluded in his Internal Affairs report on October 21, 2022 Captain McShea treated Sergeant Blango disparagingly and Captain McShea did not interact and communicate with Sergeant Blango in the same way as Sergeant Blango's peers.[14] Lieutenant Conway also concluded Captain McShea violated Department policies when she failed to properly supervise Sergeant Blango and treat all employees under her supervision fairly and equally.[15] Lieutenant Conway found it unclear why Captain McShea treated Sergeant Blango differently as multiple Black supervisors did not raise concerns with how Captain McShea interacted with them.[16]

The work relationship between Captain McShea and Sergeant Blango ended seven months after Lieutenant Conway's report for reasons unrelated to their relationship. Sergeant Blango chose non-work-related medical leave for hypertension from May 17, 2020 through August 30, 2020.[17] Captain McShea then retired August 30, 2020.[18]

### *Sergeant Blango decides to soon retire and sue the City and already-retired Captain McShea.*

Sergeant Blango registered for the Department's Deferred Retirement Option Plan (DROP) retirement program approximately seven months after Captain McShea retired. Sergeant Blango entered the DROP retirement program in July 2021 requiring she retire before July 2025.[19] Sergeant Blango has been out on work-related medical leave since a July 2021 car accident.[20] The Department continues to pay Sergeant Blango's full salary and benefits. Sergeant Blango has not told the Department when she will return to service or retire.[21]

Sergeant Blango sued the City of Philadelphia and the retired Captain McShea in April 2022 with over 250 allegations of fact and speculation purporting to show an entitlement to damages for race discrimination, racially hostile work environment, and retaliation.[22] The parties engaged in extensive discovery as extended until a few weeks ago. The City and Captain

McShea promptly moved for summary judgment mindful of their pretrial obligations this week.[23] Sergeant Blango belatedly responded and now concedes she cannot adduce evidence in support of her claims for race discrimination and retaliation but wishes to present her hostile work environment case to our jury.[24]

## II.    Sergeant Blango's identified hostile work environment.

Sergeant Blango argues she adduced evidence allowing a jury to find Captain McShea's conduct towards her created a racially hostile work environment.[25] Sergeant Blango uses Lieutenant Conway's report as a "catch-all" even though the Lieutenant found no evidence of Captain McShea treating other Black officers in a disparaging manner and never described the investigated conduct as severe or pervasive.[26]

Now required to show evidence (and not just rhetoric) in response to the City's and Captain McShea's arguments, Sergeant Blango identifies eleven instances of severe conduct including a couple of the interactions she described to Lieutenant Conway:

• In January 2019, Captain McShea inexplicably gave Sergeant Blango her twenty-five-year certificate as an afterthought without the recognition she gave to a White sergeant for his twenty-year certificate a few days later;[27]

• Five months later in May 2019, Captain McShea:

o started micromanaging and undermining Sergeant Blango's authority over police radio. Captain McShea circumvented Sergeant Blango's authority by issuing a directive to Sergeant Blango's officers which served no other purpose other than to undermine Sergeant Blango's authority and interfere with her job responsibilities;[28]

o completely dismissed Sergeant Blango when she attempted to bring an instance of potential bullying to Captain McShea's attention. Instead of taking Sergeant Blango's report of potential workplace harassment seriously, Captain McShea suddenly interrupted

4

Sergeant Blango and snapped "Don't you have more important things to do than call me about this?";[29]

• A month later, Captain McShea unilaterally issued a counseling memo to an officer supervised by Sergeant Blango even though Sergeant Blango gave the officer specific permission to leave the patrol area. Sergeant Blango felt Captain McShea never unilaterally imposed discipline on officers supervised by White persons;[30]

• In July 2019, Captain McShea:

o ordered Sergeant Blango to work while Sergeant Blango is off-duty. Sergeant Blango explained she came in two hours early to prepare food for a Fourth of July celebration. She felt Captain McShea treated her differently because of her race. Sergeant Blango reported to her supervisor Lieutenant Scott of Captain McShea being racially biased. Lieutenant Scott relayed Sergeant Blango's allegations directly to Captain McShea;[31]

o responded to Lieutenant's Scott's notice of Sergeant Blango's allegations of racial bias and preemptively contacted Internal Affairs to notify them of Sergeant Blango's allegations. The Department approved formal disciplinary action requested by Captain McShea against Sergeant Blango the same day. The underlying disciplinary incident of "failure to make a written report" occurred in February 2019;[32]

• In September 2019, Captain McShea:

o unilaterally removed officers from Sergeant Blango's platoon, resulting in Sergeant Blango having significantly less officers than other platoons for two months;[33]

o undermined Sergeant Blango's authority by unilaterally taking formal disciplinary action against an officer under Sergeant Blango's supervision but, according to

Sergeant Blango, Captain McShea deferred to White supervisors when it came to disciplinary actions to be taken against the officers they supervised;[34]

      o   excluded Sergeant Blango from an opportunity to attend Police Supervisor In-Service Training and instead sent another officer knowing POSIT training is considered a prerequisite for a promotion from sergeant to lieutenant;[35]

- In October 2019, Captain McShea served Sergeant Blango with a notice of formal discipline two days before her scheduled lieutenant test. Formal discipline remains on an officer's record for years and can negatively impact career advancement. The underlying incident is from a "neglect of duty" and "failure to make a written report" incident from February 2019 as earlier reported in July 2019;[36] and,

- Captain McShea is hypercritical of any mistake Sergeant Blango made, no matter how trivial, including inaccuracies in reports in January 2020 and correcting spelling of her name in February 2020. Captain McShea micromanaged Sergeant Blango when she conducted a time check White officers did not have to do in September 2019, questioned Sergeant Blango over the radio December 2019, and required her to come back from responding to a call on the street to perform a roll call even though she had never required a White officer to do so in May 2020.[37]

## III.    Analysis

The City and Captain McShea move for summary judgment arguing Sergeant Blango failed to adduce prima facie evidence of a hostile work environment in the 16th District on account of her race. The City and Captain McShea argue Sergeant Blango did not adduce evidence of severe or pervasive conduct nor evidence Sergeant Blango's race motivated Captain McShea's alleged mistreatment of Sergeant Blango even when considering Lieutenant Conway's findings largely based on hearsay.[38]

Sergeant Blango responds she adduced evidence: (1) Captain McShea's conduct is so severe or pervasive so as to alter the conditions of Sergeant Blango's employment; (2) her race and protected activity unlawfully motivated Captain McShea's treatment of Sergeant Blango; (3) the hostile work environment detrimentally affected Sergeant Blango subjectively and objectively; and (4) the City is liable under respondeat superior.[39]

The City and Captain McShea reply Sergeant Blango's reliance on hearsay is inadequate for summary judgment, there is no evidence Captain McShea treated Sergeant Blango differently because of her race, and Sergeant Blango never pleaded a retaliatory hostile work environment claim.[40]

We find Sergeant Blango cannot proceed with her hostile work environment claims because she has not shown Captain McShea's conduct to be severe or pervasive, or the alleged mistreatment to be motivated by Sergeant Blango's race. We grant summary judgment in favor of the City and Captain McShea.[41]

### A. Sergeant Blango fails to adduce evidence of a hostile work environment claim.

Sergeant Blango claims the City and Captain McShea created a racially hostile work environment towards Black officers in the 16th District from January 2019 until October 2019.

We must examine the summary judgment record to decide whether Sergeant Blango adduced evidence (and not solely her say-so) to proceed to a jury. Our Court of Appeals instructs Sergeant Blango must today adduce evidence to allow a jury to find: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race in the same position; and (5) the existence of respondeat superior liability.[42] We "evaluate the frequency of the conduct, its severity, whether it is

physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance."[43] Congress did not intend Title VII as a "general civility code" and "conduct must be extreme to amount to a change in the terms and conditions of employment."[44] We view the alleged conduct under a "totality of the circumstances" analysis.

### 1. Sergeant Blango offers no evidence of Captain McShea's racially motivated conduct.

Our first issue is whether Captain McShea's alleged mistreatment of Sergeant Blango occurred because of Ms. Blango's race. The City and Captain McShea argue there is no evidence Captain McShea's alleged mistreatment is based on Sergeant Blango's race. They contend Captain McShea did not make a single-race based comment and all alleged examples of conduct are facially neutral.[45] Sergeant Blango counters Internal Affairs Lieutenant Conway reported Captain McShea treated Sergeant Blango differently because of her race and the alleged conduct between January 2019 and May 2020 to be racially motivated.[46] We find no evidence for this bald conclusion. Sergeant Blango offers no evidence Captain McShea's alleged mistreatment (including as partially reported by Lieutenant Conway) of Sergeant Blango can be attributed to Sergeant Blango's race.

Our Court of Appeals instructs the intentional discrimination necessary for proceeding to trial on a hostile work environment claim must be *because of her race*.[47] We are generally not "keen on crediting or classifying facially neutral comments as direct evidence of a hostile work environment."[48] An employee must show the conduct creating the hostile work environment "was *motivated by animus based on . . . race*."[49] For example, in *Jackson v. Gannett Co. Inc.*, Judge Rodriguez granted summary judgment dismissing a hostile work environment claim when the employee alleged "disparaging comments, unfounded criticism, and a sense of hostility he received from his supervisors" but failed to establish this allegedly hostile behavior related to his

protected trait (disability).[50] In *Alers v. City of Philadelphia*, Judge Jones found no hostile work environment absent evidence of racial comments towards the employee.[51] In *Koschoff v. Henderson*, the harassment included discussing the employee's bathroom habits, pressuring her to meet alone with supervisors, evaluating her using unconventional standards, enhancing intimidation and supervision, and denying grievance time.[52] Judge Van Antwerpen found "mistreatment and disrespect unmotivated by the plaintiff's [protected trait of gender] does not create a hostile work environment."[53] In *Hunter v. Trustees of University of Pennsylvania*, Judge Beetlestone found even "the three arguably race-based incidents or comments in the summary judgment record" failed to establish a hostile work environment.[54] The employer negatively critiqued the employee relying on a racial troupe about angry Black women, called her "low" and "low down dirty," and joked her son would likely need to be bailed out of jail someday.[55] We lack a racial utterance. We are similarly persuaded by the lack of evidence before us. We cannot rely on the Sergeant's counsel's conclusory assertions at the summary judgment stage.

Sergeant Blango failed to meet her burden of adducing evidence her race motivated the alleged mistreatment from Captain McShea. First, Sergeant Blango conceded Captain McShea did not make racist or racially disparaging comments to her.[56] We agree with Judge Jones in *Alers* and are reluctant to find a racially hostile work environment when <u>no</u> racial comments or actions are made.[57] Second, Sergeant Blango relies centrally on the Internal Affairs report to establish McShea treated Sergeant Blango differently because of her race.[58] Sergeant Blango argues the "[Philadelphia Police Department]'s investigation of Plaintiff's February 2020 [Equal Employment Opportunity] Complaint revealed . . . [Captain] McShea treated Plaintiff and other Black officers in the 16th District differently because of their race."[59] But the report finds otherwise. Lieutenant Conway instead found it unclear why Captain McShea treated Sergeant

Blango differently and multiple Black supervisors did not have concerns with how Captain McShea interacted with them.[60] Lieutenant Conway found Captain McShea treated Sergeant Blango disparagingly but did not find Captain McShea treated her differently *because of her race.*[61]

Judge Rodriquez's reasoning in *Jackson v. Gannett Company, Inc.* and Judge Van Antwerpen's reasoning in *Koschoff v. Henderson* are also instructive. Sergeant Blango may have been subject to "disparaging comments, unfounded criticism, and a sense of hostility" by Captain McShea, but Sergeant Blango has not adduced evidence this treatment is because of her race.[62]

Sergeant Blango cites only four instances as possibly race-related: Sergeant Blango claims Captain McShea gave more recognition to a White officer's service certificate, never unilaterally imposed discipline on officers supervised by White officers, always deferred to White officers when imposing discipline, and did not require White officers to do a time check.[63] These facially neutral actions are not race-related like the "race-based incidents or comments" found by Judge Van Antwerpen in *Koschoff v. Henderson*.[64] These supervisory actions by Captain McShea are not race-based. Sergeant Blango is the only person attributing this conduct to her race.[65] Sergeant Blango's conclusory argument "[Captain] McShea's actions between January 2019 and May 2020 were racially motivated" is not supported with a cite to evidence other than her say-so.[66] So even if all of Sergeant Blango's allegations are true, she provides us no evidence the facially neutral criticism, micromanagement, and annoyances occurred because of her race. We do not have an evidentiary basis to infer racial animus.

We do not opine on the other elements of Sergeant Blango's hostile work environment claims. Sergeant Blango's inability to adduce evidence of severe or pervasive conduct altering the conditions of her employment on account of her race requires we dismiss her claim as a

matter of law. We need not opine on the remaining elements of a racially hostile work environment claim. Sergeant Blango's hostile work environment claims do not survive summary judgment because she has not adduced evidence she suffered discrimination because of her race or the discrimination to be severe or pervasive.

### 2.    Sergeant Blango offers no evidence of Captain McShea's severe or pervasive conduct.

Our second issue is whether Captain McShea's alleged mistreatment in workplace relations with Sergeant Blango is severe or pervasive. The City and Captain McShea argue Sergeant Blango's "petty grievances" and limited interactions with Captain McShea over several months is not severe or pervasive conduct.[67] Sergeant Blango counters Captain McShea's micromanaging, circumventing authority, disciplining, and other unpleasantries amount to the proverbial "death by a thousand cuts" and created a racially hostile work environment altering the conditions of Sergeant Blango's employment. We agree with the City and Captain McShea.

The Supreme Court instructs we determine severity or pervasiveness by looking to the "frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance."[68] We are persuaded by the reasoning of our Court of Appeals and Judge Jones in similar situations. In *Perry v. Harvey*, our Court of Appeals affirmed summary judgment dismissing a Black employee's hostile work environment claim despite evidence of patently racist remarks.[69] Mr. Perry's supervisor referred to men of color as "dumb and useless" and approached Mr. Perry asking, "what are you doing here, boy?".[70] The court found the evidence did not show severe or pervasive comments to a level high enough to "alter the conditions of employment and create an abusive working environment."[71] In *Alers v. City of Philadelphia*, Judge Jones rejected a racially hostile work environment claim against the Philadelphia Police Department when the Hispanic

11

officer relied only on "underwhelming, facially neutral incidents."[72] Co-workers pulled pranks on the Hispanic officer and stole his handgun; his superiors denied him overtime.[73] Judge Jones found the "alleged discrimination did not occur frequently or with any degree of severity . . . and the officer provided no evidence the alleged discrimination to be physically threatening, humiliating, or unreasonably interfered with their work performance."[74]

Sergeant Blango concludes without pointing to evidence the severity and pervasiveness of Captain McShea's conduct altered her conditions of employment.[75] Sergeant Blango does not cite a single racist utterance. She does not cite threats or unreasonable interference with her work performance. We do not find the alleged instances to be physically threatening or particularly humiliating to rise to the level of severe. She adduces no evidence of racist remarks or racially disparaging comments.[76] Normal, facially-neutral, supervisorial management tasks of checking in on officers, reorganization, or criticisms cannot be the basis of a hostile work environment claim.[77]

Sergeant Blango also concedes she only communicated with Captain McShea about two times a week by phone or radio.[78] Sergeant Blango does not allege each of these communications contributed to a hostile work environment and admits many of her cited incidents occur weeks apart.[79] We cannot find this infrequent contact is sufficiently pervasive especially when there is no basis to find Captain McShea treated other Black officers in this manner.

Sergeant Blango does not and cannot show Captain McShea's conduct altered her employment conditions. Captain McShea admitted having less officers in a platoon can make the Sergeant's job more difficult.[80] But Sergeant Blango does not allege her job became more difficult after Captain McShea removed officers from her platoon.[81] Sergeant Blango's condition of employment remained unchanged. There is no evidence the alleged circumventing of Sergeant

Blango's authority, micromanagement, or criticism prevented Sergeant Blango from completing her job in a satisfactory manner or changed her employment in any way. She is today being paid her same salary. No one forced her to change her position. She took leave from her service because of a car accident not because of hostility towards her.

Sergeant Blango adduced no evidence she entered the DROP retirement program because of Captain McShea when Captain McShea retired at least seven months before Sergeant Blango applied for DROP retirement.[82] Sergeant Blango is still receiving full compensation and benefits while out on work-related medical leave unrelated to Captain McShea.[83] We find no evidence of severe or pervasive conduct sufficient to alter her conditions of employment.

### B. Sergeant Blango cannot shift to an unpleaded retaliatory hostile work environment claim to induce a jury trial.

Sergeant Blango attempts to argue Captain McShea's conduct is evidence of a retaliatory hostile work environment after Sergeant Blango engaged in a protected activity of filing an internal complaint leading to Lieutenant Conway's investigation and report.[84] Sergeant Blango argues she engaged in a protected activity when she told Captain McShea she had to treat everyone equally regardless of their race.[85]

But Sergeant Blango did not plead a retaliatory hostile work environment claim which is a separate claim from a general hostile work environment claim.[86] A "retaliatory hostile work environment mirrors the general hostile work environment test, except . . . the discrimination must be because of a protected activity, rather than a plaintiff's protected class."[87]

Sergeant Blango only alleged "[Captain] MCSHEA, in her capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race and/or color. The City delegated to [Captain] MCSHEA the authority to control Plaintiff's work environment, and [Captain] MCSHEA abused

that authority to create a hostile work environment."[88] This allegation does not place the City, Captain McShea, or us on notice of a retaliatory hostile work environment claim.

Sergeant Blango voluntarily withdrew her retaliation claim. She cannot turn around and try to argue a retaliatory hostile work environment when she never plead this theory. We do not address Sergeant Blango's unpleaded arguments for a retaliatory hostile work environment claim.

## IV.    Conclusion

Sergeant Blango adduced no evidence allowing us to find a genuine issue of material fact. Sergeant Blango presents no legal basis for her theories of a hostile work environment because of her race. We enter summary judgment in favor of the City and Captain McShea.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. The City of Philadelphia and Captain McShea filed their Motion, memorandum in support of summary judgment, and SUMF and Appendix at ECF Doc. Nos. 37, 37–1, 37–2, and 37–4 through 37–19. Sergeant Blango filed her response brief, additional SUMF, response to the City and Captain McShea's SUMF, and supplemental Appendix at 38–1, 38–2, 38–3, and 38–4 through 38–5. Both parties' Appendices ("Appx.") are Bates-stamped BLANGO SJ 000001 – 001317. ECF Doc. Nos. 37–4 through 37–17 and 38–4 through 38–5.

[2] Appx. at 24, 806.

[3] Appx. at 31; ECF Doc. No. 37–2 ¶ 8.

[4] Appx. at 31–32; ECF Doc. No. 37–2 ¶¶ 24–27.

[5] Appx. at 105–108, 110–111, 347, 349. *See also* ECF Doc. No. 37–2 ¶¶ 10–18.

[6] Appx. at 105–108, 110–111, 347, 349.

[7] Appx. at 250; ECF Doc. No. 37–2 ¶ 28.

Case 2:22-cv-34648 Document 7 Page: 17 Date Filed: 01/05/2023

---

[8] Appx. at 101; ECF Doc. No. 37–2 at 1.

[9] Appx. at 25–28.

[10] *See infra* at 5–8.

[11] Appx. at 860.

[12] Appx. at 860.

[13] Appx. at 913–1106.

[14] Appx. at 906.

[15] Appx. at 907.

[16] Appx. at 906.

[17] Appx. at 163–183; ECF Doc. No. 37–2 ¶¶ 112, 117.

[18] Appx. at 222; ECF Doc. No. 37–2 ¶126.

[19] Appx. at 264; ECF Doc. No. 37–2 ¶ 129.

[20] Appx. 414; ECF Doc. No. 37–2 ¶135; ECF Doc. No. 38–3 ¶ 135.

[21] Appx. 225–226; ECF Doc. No. 37–2 at ¶¶ 136, 138; ECF Doc. No. 38–3 ¶¶ 136, 138.

[22] ECF Doc. No. 1. Sergeant Blango's dramatic allegations read like a press release or prepared story for widespread release. Our scrutiny is more exacting. She is welcome to express her claims consistent with Federal Rules 1, 8, and 11 but our collective obligation as jurists and lawyers is to focus on the facts which may allow recovery particularly when we test the allegations after fulsome discovery and before summoning jurors.

[23] Sergeant Blango inexplicably and without leave responded to the Motion for summary judgment a day late. ECF Doc. No. 30. She just assumed she could file late. We moved our original October 21, 2022 dispositive motions and November 4, 2022 response deadline because of Sergeant Blango's Motion to compel discovery which we granted in part. ECF Doc. Nos. 15, 24, and 30. We considered Sergeant Blango's unexplained untimely Response (notwithstanding our Order and Policies "[r]espondent's failure to comply in all respects may result in the Court's considering the motion as uncontested") in the interests of resolving Sergeant Blango's claims on the merits. But the parties' discovery delays resulted in the unfortunate result of issuing today's Order a day before the parties' trial motion deadlines as we set trial to begin in eighteen days. We set our schedule (ECF Doc. No. 15) over four months ago with the parties' input to allow

15

time for our analysis before the parties invest time and money in pretrial submissions. We regret the parties may have begun preparing those filings but cannot justifiably gripe when their clients may be unresponsive to Federal Rule of Civil Procedure 1 leading us to push back the deadlines or if counsel do not timely respond to pending motions.

[24] ECF Doc. No. 38–1 at 17.

[25] ECF Doc. No. 38–1 at 5–10.

[26] ECF Doc. No. 38–1 at 5; ECF 38–2 ¶¶274–275; Appx. at 855–1106.

[27] ECF Doc. No. 38–1 at 5; ECF Doc. No. 38–2 ¶¶ 13–21; Appx. at 914, 1027.

[28] ECF Doc. No. 38–1 at 5; ECF Doc. No. 38–2 ¶¶ 22–26; Appx. at 914, 1043.

[29] ECF Doc. No. 38–1 at 5; ECF Doc. No. 38–2 ¶¶ 27–32; Appx. at 915, 1029, 1043.

[30] ECF Doc. No. 38–1 at 5; ECF Doc. No. 38–2 ¶¶ 33–46; Appx. at 127–128, 915–916, 1044.

[31] ECF Doc. No. 38–1 at 6; ECF Doc. No. 38–2 ¶¶ 47–56; Appx. at 74–76, 915, 1043.

[32] ECF Doc. No. 38–1 at 6; ECF Doc. No 38–2 ¶ 73–82; Appx. at 422, 603-605, 1044.

[33] ECF Doc. No. 38–1 at 6–7; ECF Doc. No. 38–2 ¶¶ 101–112.

[34] ECF Doc. No. 38–1 at 7; ECF Doc. No. 38–2 ¶¶ 121–132; Appx. at 917–918, 1046.

[35] ECF Doc. No. 38–1 at 7; ECF Doc. No. 38–2 ¶¶ 133–138; Appx. at 918, 1046.

[36] ECF Doc. No 38–1 at 7; ECF Doc. No. 38–2 ¶¶ 139–156; Appx. at 364–365, 918, 1046, 1243–1249.

[37] ECF Doc. No. 38–1 at 7; ECF Doc. No 38–2 ¶¶ 113–120, 163–169, 176–187, 205–218, 238–245.

[38] ECF Doc. No. 37–1 at 19–25; ECF Doc. No. 29 at 2–5. The City and Captain McShea argue we cannot consider on summary judgment Lieutenant Conway's Internal Affairs report because the report contains and relies on hearsay and unsworn statements. ECF Doc No. 39 at 2–5. Our Court of Appeals instructs "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223, n.2 (3d Cir. 2000) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)). We have no basis to find Lieutenant Conway and the other interviewed officers are not available to testify at trial.

[39] ECF Doc. No 38–1 at 2–17.

---

[40] ECF Doc No. 39.

[41] ECF Doc. Nos. 37, 37–1. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[42] *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 286 (3d Cir. 2010) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996). *See also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). We evaluate claims for hostile work environment based on race for Title VII, § 1983, and § 1981 under the same analysis. See *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005) and *Starnes v. Butler Cty. Ct. of C.P., 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020).

[43] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[44] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *See also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

[45] ECF 37–1 at 26–28.

[46] ECF Doc. 38–1 at 8–10.

[47] *Castleberry v. STI Grp.*, 863 F.3d at 264; *Sanchez*, 362 F. App'x at 286 (citing *Aman*, 85 F.3d at 1081.

[48] *Qin v. Vertex, Inc.*, No. 20-2423, 2022 WL 10493574 (E.D. Pa Oct. 18, 2022). *See, e.g.*, *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528 (E.D. Pa. 2013) ("Plaintiffs admit there is no direct evidence of hostile comments based on their race or ethnicity, and instead rely on only a handful of underwhelming, facially neutral incidents to purport a hostile work environment.").

[49] *Lucas v. City of Philadelphia*, No. 11-4376, 2013 WL 2156007, at *13 (E.D. Pa. May 17, 2013) (emphasis added) (quoting *Mufti v. Aarsand & Co., Inc.*, 667 F.Supp.2d 535, 544–45 (W.D.Pa. 2009)).

[50] *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011).

[51] *Alers*, 919 F.Supp. 2d at 546.

[52] *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000).

[53] *Id.*

[54] *Hunter v. Trustees of Univ. of Pennsylvania*, No. 20-2334, 2021 WL 1424710, at *8 (E.D. Pa. Apr. 15, 2021).

[55] *Id.* at *2, *8.

[56] Appx. at 223; ECF 37–1 at 26.

[57] *Alers*, 919 F.Supp. at 528.

[58] ECF 38–1 at 9–10.

[59] *Id.* at 9.

[60] Appx. at 906.

[61] *Id.*

[62] ECF Doc. No. 38–1 at 11–12; *Jackson*, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011).

[63] ECF Doc. No. 38–1 at 6–10.

[64] *Koschoff,* 109 F. Supp. 2d at 346.

[65] *Id.*

[66] ECF Doc. No. 38–1 at 12.

[67] ECF Doc. No. 37–1 at 24.

[68] *Harris*, 510 U.S. at 23.

[69] *Perry v. Harvey*, 332 F.App'x 728, 731–33 (3d Cir. 2009).

[70] *Id.*

[71] *Id.*

[72] *Alers*, 919 F. Supp. 2d at 528.

[73] *Id.* at 546.

[74] *Id.*

[75] ECF Doc. No. 38–1 at 10.

[76] Appx. at 223.

[77] *Jackson*, 2011 WL 3362154, at *5 (plaintiff must realize that "not everything that makes an employee unhappy" forms the basis for an actionable hostile work environment claim).

[78] Appx. at 64.

[79] ECF Doc. No. 38–1 at 3–8.

[80] Appx. at 658.

[81] ECF Doc. No. 38–2 ¶¶ 101–112.

[82] Appx. at 267–268; ECF Doc. No. 37–2 ¶ 132; ECF Doc. No. 38–3 ¶ 132.

[83] Appx. at 225–226; ECF Doc. No. 37–2 ¶ 136; ECF Doc. No. 38–3 ¶ 136.

[84] ECF Doc. No. 38–1 at 12–14.

[85] *Id.* at 12.

[86] ECF Doc. No. 39 at 7–9.

[87] *Prioli v. Cnty. of Ocean*, No. 18-256, 2021 WL 4473159, at *17 (D.N.J. Sept. 30, 2021) (citing *Yarnall v. Phila. Sch. Dist.*, 57 F. Supp. 3d 410, 436 (E.D. Pa. 2014)).

[88] ECF Doc. No. 1 ¶¶ 265–266.

Case: 22-3446     Document: 7     Page: 22     Date Filed: 01/05/2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TANYA BLANGO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-1487** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **CHRISTINE MCSHEA** | : | |

### <u>ORDER</u>

**AND NOW**, this 1st day of December 2022, upon considering Defendants' Motion for summary judgment (ECF Doc. No. 37), Plaintiff's Response (ECF Doc. No. 38), Defendants' Reply (ECF Doc. No. 39), and for reasons in the accompanying Memorandum confirming there are no genuine issues of material fact and judgment is warranted as a matter of law, it is **ORDERED** Defendants' Motion (ECF Doc. No. 37) is **GRANTED** entering judgment in favor of Defendants and requiring the Clerk of Court to **close** this case.

_____
KEARNEY, J.